**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Nathan Mitchell GONZALES, Defendant–Appellant.**

No. 08–10148.

United States Court of Appeals, Ninth Circuit.

Submitted Feb. 10, 2009.*

Filed Feb. 12, 2009.

Ray Gattinella, Esquire, Robert Lawrence Ellman, Esquire, Assistant U.S., USLV–Office of the U.S. Attorney, Las Vegas, NV, for Plaintiff–Appellee.

Jason F. Carr, Esquire, Assistant Federal Public Defender, Shari Kaufman, Esquire, Rene Valladares, Esquire, Assistant Federal Public Defenders, Federal Public Defender's Office, Las Vegas, NV, for Defendant–Appellant.

---

* The panel unanimously finds this case suitable for decision without oral argument. *See* Fed.

R.App. P. 34(a)(2).

![black redaction bars]

Before: D.W. NELSON, W. FLETCHER and TALLMAN, Circuit Judges.

MEMORANDUM **

Nathan Mitchell Gonzales appeals his conviction, following a conditional guilty plea, for unlawful possession of a fully automatic weapon under 18 U.S.C. § § 922(o) and 924(a)(2). Gonzales contends that the district court erred by denying his motion to suppress the machine pistol found on his person because officers lacked reasonable suspicion to conduct an investigatory stop.[1] We have jurisdiction pursuant to 28 U.S.C. § 1291 and affirm.

We review de novo the denial of a motion to suppress evidence. United States v. Davis, 530 F.3d 1069, 1077 (9th Cir.2008). We also review de novo the district court's determination of reasonable suspicion. Id. We review any underlying factual findings for clear error. Id.

The police had reasonable suspicion to stop and detain Gonzales. Within fifteen minutes after a Las Vegas armed bank robbery, the signal from a B-pack[2] embed-ded within the stolen money led Metropolitan Police Officer Davideit to conclude based on the signal strength that it came from one of two possible vehicles located next to his patrol car—a black pickup truck and a teal Chrysler 300 with darkly tinted windows, chrome wheels, and a rear bumper cracked on the passenger side—at an intersection a mere three miles from the bank. Unable to follow both vehicles, Officer Davideit first stopped and eliminated as a suspect the sole occupant of the black pickup when a bank teller brought to the scene indicated that he was not the robber. About an hour later, Detective Araujo observed in the vicinity of the robbery the same teal Chrysler 300 with darkly tinted windows, chrome wheels, and a rear bumper cracked on the passenger side earlier detected by Officer Davideit. When two individuals exited this Chrysler, Detective Araujo saw that the passenger, a large black man with a big belly and facial hair, generally matched the description given by tellers of the bank robber.[3] In Detective Araujo's experience, bank robbers frequently use a getaway driver to leave the scene of the crime. Under the totality of the circumstances, therefore, police had reasonable suspicion to detain and frisk both occupants of the Chrysler: the passenger, Dexter Logan, as well as the driver, Gonzales.

Gonzales contends, however, that reasonable suspicion cannot be predicated on

---

** This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36–3.

1. Gonzales does not challenge the constitutionality of the ensuing pat down search. Shortly after Detective Araujo detained Gonzales, Gonzales spontaneously declared, "I have a gun."

2. A B-pack is an electronic tracking device inserted into the money given to a bank robber; the signal it emits when the money is removed from the bank can be tracked by officers using both signal towers and tracking devices in their vehicles.

3. Although the passenger's attire did not match that of the bank robber, Detective Araujo testified that, in his experience, bank robbers often change their clothing after a robbery. The clothing worn by the robber lay in plain view on the back seat of the sedan.

the B-pack signal because, in this instance, the tracking system used was unreliable. We disagree. First, that the signal towers transmitted the B-pack's signal only intermittently on the day in question does not establish that the signal was unreliable when the towers were active. The objection goes to the weight, not the admissibility, of this item of evidence to justify the stop. Second, although conflicting testimony was offered regarding whether the B-pack's signal could be detected by equipment in an officer's vehicle in the absence of tower activity, we find no clear error in the trier of fact's resolution of this issue as a factor to be considered in the totality of the circumstances establishing reasonable suspicion. *United States v. Arvizu,* 534 U.S. 266, 273, 122 S.Ct. 744, 151 L.Ed.2d 740 (2002). Third, although Officer Davideit's tracking device could not determine from which of two adjacent vehicles the B-pack signal emanated, elimination of the pickup truck allowed police to identify the Chrysler as the signal's only other possible source. Given the short time lapse after the robbery and the proximity of the car to the bank when first detected, coupled with the detective's observation that the passenger matched the description of the bank robber, the district court properly ruled the initial *Terry stop* was valid.

Accordingly, the district court properly denied Gonzales' motion to suppress the gun found on his person during the pat down frisk for weapons.

**AFFIRMED.**